# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## CEDAR RAPIDS DIVISION

CHRISTIAN STORM BOOKER,

            Plaintiff,

vs.

ANAMOSA STATE PENITENTIARY,
et al.,

           Defendants.

No. C22-0065-LTS-KEM

**MEMORANDUM, OPINION AND ORDER**

This matter is before me pursuant to plaintiff Christian Booker's pro se 42 U.S.C. § 1983 complaint (Doc. 1), motion (Doc. 2) to proceed in forma pauperis and motion (Doc. 3) to appoint counsel. Booker originally filed this case in the Southern District of Iowa. On July 6, 2022, the case was transferred to this district. Doc. 4. In his pro se complaint, Booker alleges that his rights were violated when defendants took anatomical photos of him while at the Anamosa State Penitentiary.

## I. *MOTION TO PROCEED IN FORMA PAUPERIS*

Booker did not submit the statutory filing fee. *See* 28 U.S.C. § 1914(a) (requiring filing fee). In order for a court to authorize the commencement of an action without the prepayment of the filing fee, a person must submit an affidavit that includes a statement of all the assets the person possesses. *See* 28 U.S.C. § 1915(a)(1). In addition, a prisoner must submit a certified copy of the trust fund account statement (or institutional equivalent) for the six-month period immediately preceding the filing of the complaint, obtained from the appropriate official of each prison at which the prisoner was or is confined. *See* 28 U.S.C. § 1915(a)(2).

Booker is currently an inmate at the Newton Correctional Facility, in Newton, Iowa, and he has submitted documents (Doc. 2) that substantially comply with the requirements set out above. Because it is clear that he does not have the assets necessary to pay the filing fee, his motion to proceed in forma pauperis is granted. However, even when the court deems it appropriate to grant a prisoner-plaintiff in forma pauperis status, that plaintiff is required to pay the full $350.00 filing fee by making payments on an installment basis. 28 U.S.C. § 1915(b)(1); *see also In re Tyler*, 110 F.3d 528, 529–30 (8th Cir. 1997) ("[T]he [Prisoner Litigation Reform Act] makes prisoners responsible for their filing fees the moment the prisoner brings a civil action or files an appeal."). The full filing fee will be collected even if the court dismisses the case because it is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks money damages against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2).

Booker must pay an initial partial filing fee in the amount of 20 percent of the greater of his average monthly account balance or average monthly deposits for the six months preceding the filing of the complaint. 28 U.S.C. § 1915(b)(1). Based on the documents Booker submitted, I find that the initial partial filing fee is $37.20. *See* Doc. 2 at 2. Booker shall submit $37.20 by no later than 30 days from the date of this order. If necessary, Booker may request in a written motion an extension of time to pay the initial partial filing fee.

In addition to the initial partial filing fee, a prisoner-plaintiff must "make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account." 28 U.S.C. § 1915(b)(2). The statute places the burden on the prisoner's institution to collect the additional monthly payments and forward them to the court. Specifically:

> [a]fter payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of

Case 1:22-cv-00065-LTS-KEM   Document 7   Filed 02/24/23   Page 2 of 15

the court each time the amount in the account exceeds $10 until the filing fees are paid.

28 U.S.C. § 1915(b)(2). Therefore, after Booker pays in full the initial partial filing fee discussed above, the remaining installments shall be collected by the institution having custody of him. The Clerk's Office shall send a copy of this order and the notice of collection of filing fee to the appropriate official at the place where Booker is an inmate.

## II. INITIAL REVIEW STANDARD

A pro se complaint must be liberally construed. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Smith v. St. Bernards Reg'l Med. Ctr.*, 19 F.3d 1254, 1255 (8th Cir. 1994); see *also Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004). However, the Court may dismiss an in forma pauperis complaint if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant that is immune from a monetary judgment. 28 U.S.C. § 1915(e)(2); *see also* 28 U.S.C. § 1915A(b)(1) (requiring the Court to do an initial review of prisoner complaints).

In reviewing a prisoner or in forma pauperis complaint, unless the facts alleged are clearly baseless, they must be weighed in favor of the plaintiff. *See Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992). Pro se complaints, however, must allege sufficient facts to support the plaintiff's claim. *Stone*, 364 F.3d at 914. A claim is "frivolous" if it "lacks an arguable basis in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *accord Cokeley v. Endell*, 27 F.3d 331, 332 (8th Cir. 1994). In determining whether a complaint fails to state a claim pursuant to § 1915(e)(2), courts generally rely on the standards articulated pursuant to Fed. R. Civ. P. 12(b)(6). *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997); *see also Atkinson v. Bohn*, 91 F.3d 1127, 1128–29 (8th Cir. 1996) (applying Rule 12(b)(6) standard to a dismissal under 28 U.S.C. § 1915(e)(2). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell*

3

*Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Pursuant to § 1915(e)(2), a court may review the complaint and dismiss sua sponte those claims that fail "to raise a right to relief above the speculative level," *id.* at 555, or that are premised on meritless legal theories or clearly lack any factual basis, *see Neitzke*, 490 U.S. at 325.

## III.   INITIAL REVIEW ANALYSIS

### A.   § *1983 Standard*

42 U.S.C. § 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

§ 1983 was designed to provide a "broad remedy for violations of federally protected civil rights." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 685 (1978). However, 42 U.S.C. § 1983 provides no substantive rights. *See Albright v. Oliver*, 510 U.S. 266, 271 (1994); *Graham v. Conner*, 490 U.S. 386, 393-94 (1989); *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979). "One cannot go into court and claim a 'violation of [42 U.S.C.] § 1983' — for [42 U.S.C.] § 1983 by itself does not protect anyone against anything." *Chapman*, 441 U.S. at 617. Rather, § 1983 provides a remedy for violations of all "rights, privileges, or immunities secured by the Constitution and laws [of the United States]." 42 U.S.C. § 1983; *see also Albright*, 510 U.S. at 271 (§ 1983 "merely provides a method for vindicating federal rights elsewhere conferred."); *Graham*, 490 U.S. at 393-94 (same); *Maine v. Thiboutot*, 448 U.S. 1, 4 (1980) ("Constitution and laws" means 42 U.S.C. § 1983 provides remedies for violations of rights created by federal statute, as well as those created by the Constitution.). To state a claim under § 1983, a plaintiff must establish: (1) the violation of a right secured by the Constitution or

4

laws of the United States and (2) the alleged deprivation of that right was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

## B.    Discussion

The crux of Booker's complaint is that defendants Ells and Minor undertook an inappropriate examination of Booker's genital area, touched him during the examination and took photos during the examination. Book also alleges that they told others in the prison about the photos and then refused to allow Booker to talk to the PREA officer.[1]

On the complaint form, Booker lists over fifteen defendants, several of who are not listed anywhere else in his complaint. Specifically, defendants Kris Karberg, "Deputy Warden," Tracy Dietch, Chad Kerker, Cale Curoe, "Anamosa Doctor," "Anamosa Security Director" are not mentioned in the narrative "claims" portion of Booker's complaint. Accordingly, those defendants will be dismissed.[2] Additionally, Booker lists the Anamosa State Penitentiary as a defendant. Section 1983 provides for a federal cause of action against a "person" who, under color of state law, violates another's federal rights. In *Will v. Michigan Dept. of State Police*, the Supreme Court ruled "that a State is not a person within the meaning of § 1983. 491 U.S. 58, 63 (1989). *See also Owens v. Scott Cty. Jail,* 328 F.3d 1026, 1027 (8th Cir. 2003) (stating that "county jails are not legal entities amenable to suit"); *Ketchum v. City of West Memphis, Ark.,* 974 F.2d 81, 82 (8th Cir. 1992) (stating that "departments or subdivisions" of local

---

[1] Booker uses the acronym/phrase "PREA officer" throughout his narrative statement, which I take to mean the officer at the Anamosa State Penitentiary charged with enforcing the Prison Rape Elimination Act, 34 U.S.C. § 30300 *et seq.*

[2] Moreover, to the extent that Booker is suing defendant Karberg and other top-ranking officials at the Anamosa State penitentiary because they are in charge of that institution, it is well-settled that the doctrine of respondeat superior cannot be the basis for liability in a § 1983 action. *Givens v. Jones*, 900 F.2d 1229, 1233 (8th Cir. 1990); *Wilson v. City of Little Rock*, 801 F.2d 316, 322 (8th Cir. 1986). Rather, liability under § 1983 "requires a causal link to, and direct responsibility for, the deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990) (citing *Rizzo v. Goode*, 423 U.S. 362, 370-71 (1976)).

government are not "juridical entities suable as such"); *and De La Garza v. Kandiyohi Cty. Jail,* 18 Fed. Appx. 436, 437 (8th Cir. 2001) (affirming district court dismissal of county jail and sheriff's department as parties because they were not suable entities).[3] Thus, the Anamosa State Penitentiary is not an appropriate defendant.

Booker uses the standard § 1983 complaint form, but his actual allegation is contained in an appended narrative statement. Under the "Basis for Jurisdiction" section of the form, Booker states that his Eighth and Fourteenth Amendment rights were violated, along with "State title 42 chapter 50." Doc. 1 at 6.[4] As previously noted, § 1983 "merely provides a method for vindicating federal rights elsewhere conferred." *Albright*, 510 U.S. at 271. A pro se litigant "is not excused from complying with procedural rules, including Federal Rule of Civil Procedure 8, which requires a short and plain statement showing the pleader is entitled to relief, and that each allegation in the pleading be simple, concise, and direct." *Cody v. Loen*, 468 F. App'x 644, 645 (8th Cir. 2012) (unpublished) (citation omitted). Nowhere in his complaint does Booker allege that any particular defendant violated any of his particular rights. On that basis alone, a court could dismiss his complaint. However, I will attempt to give the most generous possible interpretation to his complaint and analyze his individual allegations.

First, Booker sues all the defendants in both their individual and official capacities. "A suit against a public official in his official capacity is actually a suit against the entity

---

[3] Municipalities may be found liable in a § 1983 case under limited circumstances, pursuant to the rationale articulated in *Monell v. Department of Social Servs. of New York*, 436 U.S. 658 (1978). *See Szabla v. City of Brooklyn Park, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). The complaint in this case does not appear to make any *Monell* type claims.

[4] I am unable to discern what Booker is referring to regarding the cited state law. Iowa Code § 50.42 relates to certified mail in elections, and Iowa Code § 42.50 does not exist, and regardless, Iowa Code § 42 relates to election redistricting. Additionally, violation of a state law is not sufficient to state a claim under § 1983. *See Ebmeier v. Stump*, 70 F.3d 1012, 1013 (8th Cir. 1995) ("We take this opportunity to emphasize that violations of state laws, state-agency regulations, and, more particularly, state-court orders, do not by themselves state a claim under 42 U.S.C. § 1983.").

for which the public official is an agent." *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006). To impose § 1983 liability on a local government body, a plaintiff must show that an official policy or widespread practice caused a deprivation of a constitutional right. *Monell*, 436 U.S. at 690-91; *see also Clay v. Morgan*, 79 Fed. App'x. 940, 941 (8th Cir. 2003) (affirming summary judgment for defendant because the plaintiff provided no evidence of "any policies or customs concerning the delay or denial of treatment to inmates with diseases like MS"). Booker alleges neither. Thus, his official capacity claims against must be denied.

Second, the PREA does not create a private cause of action. *See Featherston v. Horan*, No. 4:22-CV-00154, 2022 WL 2196743, at *3 (E.D. Ark. May 27, 2022), *report and recommendation adopted*, No. 4-22-CV-00154, 2022 WL 2193088 (E.D. Ark. June 17, 2022); *See also Bowens v. Wetzel*, 674 F. App'x 133, 137 (3d Cir. 2017)."[5]

> Furthermore, the Eleventh Circuit Court of Appeals has held that a violation of the PREA is not a per se violation of the Eighth Amendment. *Cox v. Nobles*, 15 F.4th 1350, 1361 (11th Cir. 2021), *cert. denied*, 142 S. Ct. 1178 (2022). Still further that court concluded that a prisoner cannot "circumvent long-established Eighth Amendment jurisprudence by alleging a violation of the PREA in a conclusory fashion." *Id*. at 1361–62.

*Doe v. Frakes*, No. 8:20-CV-128, 2022 WL 2373825, at *5 (D. Neb. June 30, 2022). To the extent Booker is claiming defendants violated the PREA, those claims are denied. Relatedly:

> An inmate has a liberty interest in the nature of his confinement, but not an interest in the procedures by which the state believes it can best determine how he should be confined. *Kennedy v. Blankenship*, 100 F.3d 640, 643 (8th Cir. 1996). As such, "there is no constitutional liberty interest in having state officers follow state law or prison officials follow prison regulations." *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003). To that end, a prison grievance procedure is a procedural right only and does not confer upon an inmate a substantive right. *Buckley v. Barlow*, 997 F.2d

---

[5] The fact that the PREA does not create a private right of action does not mean that the type of conduct the PREA seeks to prohibit may not give rise to a cause of action such as a § 1983 claim.

494, 495 (8th Cir. 1993). *See also Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002) (agreeing with district court that "defendants' denial of [plaintiff's] grievances did not state a substantive constitutional claim"); and *Fallon v. Coulson*, 5 F.3d 531, 1993 WL 349355, at *1 (8th Cir. 1993) (unpublished opinion) (stating that the failure of defendants "to acknowledge receipt of and respond to plaintiffs' grievances pursuant to prison procedure did not violate any of plaintiffs' constitutional rights").

*Vaughn v. Wallace*, No. 4:21-CV-00718, 2021 WL 3268357, at *8 (E.D. Mo. July 30, 2021). Booker claims defendants Ells, Hinson, Eivens and Soaper would not provide him access to the PREA officer.[6] However, as noted above, the PREA does not create any substantive right, nor does an inmate have a substantive right in particular prison procedures. Thus, Booker's claims regarding access to the PREA officer fail.

Third, regarding defendants Hoskins and Minor, Booker alleges that they told or encouraged inappropriate jokes about him. The Eighth Circuit has stated that "[v]erbal threats and name calling usually are not actionable under [Section] 1983." *McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993) (affirming motion to dismiss when inmate alleged prison staff harassed him); *see also Doe v. Gooden*, 214 F.3d 952, 955 (8th Cir. 2000) (stating that "demeaning and belittling references to his students" were appalling but "his use of patently offensive language did not violate his students' constitutional rights"); *King v. Olmsted Cty.*, 117 F.3d 1065, 1067 (8th Cir. 1997) (fear or emotional injury resulting "solely from verbal harassment or idle threats is generally not sufficient to constitute an invasion of an identified liberty interest.").

District courts have dismissed teasing and verbal harassment claims on initial review. *See, e.g., Roberts v. Hays*, No. 4:18-CV-445, 2018 WL 3861342, at *3 (E.D. Mo. Aug. 14, 2018) (complaint alleging correctional officers "made degrading comments to [plaintiff], and insulted and teased him" failed to state a claim upon which relief could

---

[6] As will be discussed below, defendant Mast did send the PREA officer, defendant Riddle, to see Booker.

be granted because "it is clearly established that name calling, verbal abuse, and rude or unprofessional behavior are not actionable under [Section] 1983."); *Campbell v. Barney*, No. 4:15-CV-141, 2016 WL 1370609, at *6 (D.N.D. Mar. 11, 2016) (dismissing harassment claim of pretrial detainee because, "[a]bsent more, such general allegations are not actionable as it is well settled that taunts, name calling, and the use of offensive language does not state a claim of constitutional dimension"), report and recommendation adopted, No. 4:15-CV-141, 2016 WL 1328610 (D.N.D. Apr. 5, 2016); *Abram v. McKillip*, No. 4:14-CV-3113, 2014 WL 7408254, at *2 (D. Neb. Dec. 30, 2014) (claim was frivolous because "taunts, threats, name calling, and the use of offensive language do not state a claim of constitutional dimension."). Therefore, taking Booker's claim allegation that those defendants "made fun" of him as true, he fails to state a cognizable claim because teasing does not constitute a violation of plaintiff's constitutional rights.

Fourth, although Booker mentions them in his complaint, he does not allege defendants Mast, Even and Riddle violated his rights. Rather, according to the complaint, Mast ultimately sent defendant Riddle to talk to Booker, Riddle agreed with Booker that defendant Ells should not have taken the photos and started an investigation. Neither of those actions amount to a potential constitutional violation. Defendant Even is the Iowa Department of Corrections employee who completed the investigation and found the report was, "unsubstantiated." Doc. 1 at 22. To the extent that Booker is upset about the result of the investigation, that is not sufficient to state a § 1983 claim. *Porter v. Corr. Case Manager*, No. 4:20-CV-01034, 2021 WL 243563, at *12 (E.D. Mo. Jan. 25, 2021) ("Clearly, plaintiff is upset that Investigator Idol found his PREA claim to be unsubstantiated. Nonetheless, he has not provided the Court with any facts from which to conclude that Investigator Idol's determination was incorrect, much less that the investigation was undertaken in such a manner as to violate plaintiff's constitutional rights."). Thus, Booker's claims against defendants Mast, Even and Riddle fail.

Finally, I will address Booker's claim that defendants Ells and Minor conducted a nude examination of Booker and took nude photos of his genital area, which were then

9

circulated among other prison employees. Booker states in his complaint that the purpose of these photos was to investigate whether Booker had had his penis pierced while he was incarcerated. Doc. 1 at 8. Such a piercing would have violated the Anamosa State Penitentiary rules.

Prison inmates are protected by the Fourth Amendment against unreasonable searches of their bodies. *See Levine v. Roebuck*, 550 F.3d 684, 687 (8th Cir. 2008). The Fourth Amendment requires a "balancing of the need for the particular search against the invasion of personal rights that the search entails." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). "Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Id*. In many cases the Eighth Circuit Court of Appeals has found that the balanced factors weigh in favor of allowing nude cavity searches of inmates. See *Franklin v. Lockhart*, 883 F.2d 654, 656 (8th Cir. 1989); *Goff v. Nix*, 803 F.2d 358 (8th Cir. 1986). In *Story v. Foote*, 782 F.3d 968 (8th Cir. 2015), the court affirmed the pre-service dismissal of claim regarding a visual body-cavity search of an inmate. In that case:

> Kendrick C. Story, an African–American inmate in Arkansas, sued four correctional officers pursuant to 42 U.S.C. § 1983, alleging that they violated his constitutional rights and seeking damages. Story's pro se complaint and amended complaint focus on a visual body-cavity search that one or more officers allegedly conducted of Story's person on April 16, 2013. The search occurred after Story returned to the Williams Correctional Facility from the Pine Bluff unit school.

*Id*. at 969. The Eighth Circuit found that:

> the male officers did not violate Story's clearly established rights by conducting the inspection in a location where a female officer also may have viewed the search from the master control room through a video feed from a security camera. This court in *Timm v. Gunter*, 917 F.2d 1093 (8th Cir. 1990), held that prison administrators did not violate the Fourth Amendment rights of inmates by allowing intermittent visual surveillance of male inmates by female guards while the inmates used showers and bathrooms or slept without clothing in their cells. Our opinion cited the "rational connection between sex-neutral visual surveillance of inmates and

the goal of prison security," and observed that staffing adjustments (akin to removing female officers from the master control room during searches in this case) would interfere with equal employment opportunities for women and require significant expenditures by the prison. *Id*. at 1102. We also have held that the use of cameras to monitor activities from a control booth is reasonable, even when body-cavity searches are involved. *Franklin v. Lockhart*, 883 F.2d 654, 656 (8th Cir. 1989). In light of these precedents, it was not beyond debate that a reasonable correctional officer was forbidden to proceed with a visual body-cavity search in an area monitored by security cameras while a female officer was assigned to the master control unit.

*Id*. at 972.

Here, Booker's own allegations demonstrate that the search was reasonable. Defendants, who were the same gender as Booker, were investigating a specific alleged rule violation and took Booker to a private area (the shower) to do the examination. There is no obvious less intrusive means of conducting that specific search. Although Booker avers that there was physical contact during the examination, he does not state that it was intrusive. Thus, Booker cannot allege a Fourth Amendment violation of his right to be free from unreasonable search and seizure. The fact photographs were taken does not change that outcome, because, as cited above, visual surveillance of inmates via cameras while they are nude does not amount to a constitutional violation.

However, Booker did not frame his claim as an unreasonable search, but rather as a violation of his right to be free from cruel and unusual punishment. Taking photographs of an unclothed inmate does not amount to an Eighth Amendment violation.

To the extent Plaintiff argues that the taking of photographs of Plaintiff in his boxer shorts violated the Eighth Amendment, the Court finds that there is an absence of evidence that the taking of photographs was sufficiently harmful such that it violated contemporary standards of decency. *See, e.g., Goodrick v. Sandy*, No. 1:10-cv-00603-EJL, 2013 WL 5409653, * 10 (D. Idaho Sept. 25, 2013) (granting defendants' motion for summary judgment on prisoner's claim that he was subjected to strip search and photographing of his naked body because claim did not satisfy objective or subjective components of Eighth Amendment), aff'd by No. 13-35923, 616 Fed. Appx. 222 (9th Cir. Sept. 4, 2015) (unpublished memorandum disposition).

11

*Smith v. Hatton*, No. 17-4030, 2018 WL 6025608, at *7 (N.D. Cal. Nov. 15, 2018).[7]

Regarding the allegation that defendants made physical contact with Booker during their examination, courts apply a two-pronged test that requires both a subjective and objective analysis.

> Generally, courts analyze sexual-assault allegations as excessive-force claims.[] *DeJesus v. Lewis*, 14 F.4th 1182, 1195 (11th Cir. 2021) (citing cases); *see also Ricks v. Shover*, 891 F.3d 468, 473–77 (3d Cir. 2018) (explaining that the framework for analyzing excessive-force claims has evolved to encompass sexual abuse claims). When a plaintiff raises an excessive-force claim, the "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (citations omitted). Significant injury is not required. *Id*. ("Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts.").

> Courts undertake a two-part inquiry in excessive-force cases: (1) a "subjective" inquiry into whether prison staff "acted with a sufficiently culpable state of mind"; and (2) an "objective" inquiry asking whether "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (citation omitted) (cleaned up). The inquiry evolves with contemporary standards of decency, and conduct violates a prisoner's Eighth Amendment rights if it is "repugnant to the conscience of mankind." *Id*. at 8, 10 ("[T]he Eighth Amendment's prohibition of cruel and unusual punishments 'draw[s] its meaning from the evolving standards of decency that mark the progress of a maturing society,' and so admits of few absolute limitations.").

> Several circuit courts have recently adopted an inquiry specific to sexual assault: "[a] corrections officer's intentional contact with an inmate's genitalia or other intimate area, which serves no penological purpose and is undertaken with the intent to gratify the officer's sexual desire or to humiliate the inmate, violates the Eighth Amendment." *Crawford*, 796 F.3d at 2547; *cf. Berry v. Oswalt*, 143 F.3d 1127, 1133 (8th Cir. 1998)

---

[7] And as discussed above, video surveillance of inmates, which is presumably always recorded, does not amount to a constitutional violation.

12

("A guard who propositions an inmate cannot have a motive that the law would recognize as proper.").

Under this standard, when an alleged assault begins "as an invasive procedure that serve[s] a legitimate penological purpose, the prisoner must show that the guard's conduct exceeded the scope of what was required to satisfy whatever institutional concern justified the initiation of the procedure." *Bearchild*, 947 F.3d at 1145 & n.8 (citing cases).

*Glover v. Rodriquez*, No. 19-CV-304, 2022 WL 2452257, at *2–3 (D. Minn. July 6, 2022). Booker makes no allegation that defendants had a sufficiently culpable state of mind when they undertook the examination of his penis. Nor does Booker allege that the examination exceeded its intended purpose or was sexually motivated. Thus, he has failed to state a claim for which relief can be granted.[8]

## IV. CONCLUSION

For the reasons set forth herein:

1.    Booker's motion (Doc. 2) to proceed in forma pauperis is **granted** and the court will consider the complaint (Doc. 1) filed without the prepayment of fees.

2.    Booker must pay an initial partial filing fee in the amount of $37.20. He shall submit that amount by no later than **30 days** from the date of this order. If necessary, Booker may request in a written motion an extension of time to pay the initial partial filing fee. After paying the initial partial filing fee, the remaining installments shall be collected by the institution

---

[8] Additionally, even if Booker had stated a claim for which relief could be granted, the defendants would be entitled to qualified immunity. The rights Booker alleges defendants violated were not clearly established constitutional rights of which a reasonable person would have known. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (per curiam) (officials are shielded from liability for civil damages if their actions did not violate clearly established rights of which reasonable person would have known). I have found no case in which either the Eighth Circuit or the Supreme Court has considered this issue.

having custody of him. The Clerk's Office shall send a copy of this order and the notice of collection of filing fee to the appropriate official at the place where Booker is an inmate.

3. For the reasons set out above, the complaint is **denied** for failing to state a claim and this case is **dismissed**.

4. Booker's motion (Doc. 3) to appoint counsel is **denied** as moot.

5. This dismissal could count as a strike under 28 U.S.C. § 1915(g). *See Gonzalez v. United States*, 23 F.4th 788, 791 (8th Cir. 2022) (noting that although a district court cannot prospectively find that a plaintiff has accrued one or more strikes under Section 1915(g) the court may alert the plaintiff about potential consequences of future litigation).

**IT IS SO ORDERED.**

**DATED** this 24th day of February, 2023.

_____
Leonard T. Strand, Chief Judge

14

**TO:  WARDEN/ADMINISTRATOR**
**Newton Correctional Facility, Newton, Iowa**

## NOTICE OF COLLECTION OF FILING FEE

You are hereby given notice that Christian Booker, an inmate at your facility, filed the following lawsuit in the United States District Court for the Northern District of Iowa: *Booker v. Anamosa State Penitentiary, et al.*, Case No. C22-0065-LTS.  The inmate was granted in forma pauperis status pursuant to 28 U.S.C. § 1915(b), which requires partial payments of the $350.00 filing fee.  Based on the inmate's statements, the court has assessed an initial partial filing fee of $37.20, which the inmate must pay now to the Clerk of Court.  *See* 28 U.S.C. § 1915(b)(1).

> After payment of the initial partial filing fee, the [inmate] shall be required to make monthly payments of 20 percent of the preceding month's income credited to [his] account.  The agency having custody of the [inmate] shall forward payments from [his] account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

28 U.S.C. § 1915(b)(2).  Therefore, you must monitor the account and send payments to the Clerk of Court according to the system provided in 28 U.S.C. § 1915(b)(2), that is, after the inmate pays the initial partial filing fee of $37.20, you should begin making monthly payments of 20 percent of the preceding month's income credited to the inmate's account.  Please make the appropriate arrangements to have these fees deducted and sent to the court as instructed.  If the inmate has been relocated to a different institution, please forward this Order and Notice to the institution having custody of him.  Any institution having custody of the above-named inmate shall collect and remit the filing fees as set forth above.



_____
Paul De Young
U.S. District Court Clerk
Northern District of Iowa